[No. C016541. Third Dist. Mar. 21, 1995.]

ARNOLDO GONZALEZ, Plaintiff and Respondent, v.
STATE PERSONNEL BOARD, Defendant;
DEPARTMENT OF EDUCATION, Real Party in Interest and Appellant.

**COUNSEL**

Joseph R. Symkowick and JoAnne Lowe for Real Party in Interest and Appellant.

Christopher W. Waddell, K. William Curtis, Nalda Keller and Dolly A. Jones as Amici Curiae on behalf of Real Party in Interest and Appellant.

Barbara E. Brecher for Plaintiff and Respondent.

**OPINION**

**PUGLIA, P. J.**—The California Department of Education (CDE) is required by state and federal disability statutes to make reasonable accommodation for the known physical or mental limitations of its employees who have a disability. This appeal concerns whether real party in interest, CDE, unlawfully discriminated against plaintiff, its employee, by terminating him for

misconduct caused by a disability, to wit, alcoholism, without first affording "reasonable accommodation" for plaintiff's alcoholism. Plaintiff's termination was upheld by defendant State Personnel Board (Board).

In an administrative mandamus proceeding, the superior court concluded alcoholism is a disability under state law and that state law forbids termination for misconduct related to alcoholism without first reasonably accommodating the employee's disability; the court further concluded that reasonable accommodation of alcoholism requires, at minimum, an opportunity for in-patient treatment. Since CDE had made no such accommodation, the superior court dismissed several charges of misconduct which the Board had sustained. The court found these charges were related to plaintiff's alcoholism, and directed the Board to reconsider plaintiff's termination in light of other charged misconduct, but only if it first found the other misconduct was not caused by plaintiff's alcoholism. The superior court found plaintiff fell within an exception to, and therefore did not qualify for protection under, the cognate federal disability statute. CDE appeals from the judgment.[1]

We shall hold CDE did not unlawfully discriminate against plaintiff by terminating him for misconduct related to his alcoholism without first undertaking reasonably to accommodate his "disability," because plaintiff's misconduct disqualified him from the protection of both the state and federal disability statutes, rendering it unnecessary reasonably to accommodate his disability as a precondition to termination. We shall therefore reverse.

I

We have not been provided a transcript of the administrative hearing, but the relevant facts are recited in the findings of the administrative law judge and are undisputed. Plaintiff was employed by CDE as a bilingual/migrant education consultant, responsible for developing and promoting services in the areas of bilingual and migrant education, and consulting thereon with local administrators, teachers, and others. Plaintiff's work required that he travel throughout the state on a regular basis.

On May 24, 1988, plaintiff was served a notice of adverse action imposing a 30-day suspension from work. The notice stated as the basis for this discipline that between 1985 and 1988, there had been several episodes when plaintiff reported to work intoxicated, was unable to perform his duties, was absent without leave, and used abusive language on the job. CDE informed plaintiff it considered these incidents related to his long-term

---

[1]The Board did not take an active part in the litigation in the trial court and has not entered an appearance in this court. This appeal is being prosecuted by CDE alone.

alcohol abuse and recommended he seek treatment. Plaintiff was warned continued misconduct would result in termination.

Plaintiff appealed his suspension and, on August 31, 1988, reached a settlement with CDE which reduced the suspension to seven days on the condition plaintiff "enroll in and complete an alcohol abuse treatment program."

Plaintiff attended an out-patient alcohol abuse treatment program at Kaiser Hospital on July 28, August 17, and November 10, 1988. On November 10, plaintiff began attending weekly alcohol group meetings. Nevertheless, plaintiff continued to abuse alcohol and did not submit proof to CDE that he completed Kaiser's out-patient treatment program.

On February 25, 1989, the Department of Motor Vehicles suspended plaintiff's driver's license due to alcohol-induced lapses of consciousness. On March 6, plaintiff checked out a state vehicle in order to drive to San Benito County the following day to attend a migrant education compliance review. Before leaving Sacramento, plaintiff was notified by mail his driver's license had been suspended. He did not so inform CDE.

En route to San Benito County, plaintiff began experiencing what was later diagnosed as an "alcoholic hallucinosis episode" during which he believed, falsely, that two other persons were with him in the state vehicle and were arguing. Plaintiff abandoned the vehicle on Interstate 5 in Fresno County, leaving the keys in the ignition. The next morning, March 7, he was picked up by the Fresno County Sheriff's Department and taken to Valley Medical Center where he was evaluated and released. The vehicle was later discovered and returned to Sacramento at a cost to CDE of $623.43.

Plaintiff did not notify CDE of his whereabouts on March 7 and, it goes without saying, did not attend the compliance review in San Benito County. Plaintiff returned to Sacramento on March 8 and reported to work. He was immediately placed on administrative leave. Plaintiff was directed to call his office each morning and afternoon while on leave and to prepare and deliver to his superiors by March 13 a written report of the incident. Plaintiff failed to call in as directed and he did not deliver the required incident report until two days after the March 13 deadline.

Plaintiff was terminated on March 29, 1989. At that time, he still did not acknowledge his alcoholism. A notice of adverse action listed the following misconduct as the basis for termination: (1) driving a state vehicle without a valid license; (2) abandoning a state vehicle and failing to give notice; (3)

failing to attend a scheduled compliance review; (4) being absent without leave and failing to notify CDE on March 7 and 8; (5) failing to call in on March 9, 10, 13 and 14; and (6) failing to comply with the earlier settlement agreement by attending outpatient treatment.

Plaintiff appealed his termination to the Board. An administrative law judge (ALJ) took evidence and rendered a proposed decision finding true the first five of the six grounds for termination set forth in the notice of adverse action. As to the sixth ground, failure to comply with the settlement agreement, no finding was made as CDE had indicated it did not intend to rely upon that ground. The ALJ found plaintiff's alcohol abuse directly responsible for his abandonment of the vehicle, but only indirectly responsible for the other charged misconduct. The ALJ also found CDE made "serious and sustained attempts to reasonably accommodate" plaintiff's alcoholism but plaintiff resisted all such efforts. Finally, the ALJ concluded "[t]he circumstances surrounding the misconduct and the likelihood of recurrence were of such a nature as to support dismissal." The Board adopted the ALJ's proposed decision.

Plaintiff commenced the underlying administrative mandamus proceeding pursuant to Code of Civil Procedure section 1094.5. The petition alleged the findings of the Board are not supported by the record, the decision upholding termination is not supported by the findings, and the penalty of dismissal is excessive. Plaintiff further complained the Board did not proceed in the manner provided by law, alleging it upheld his termination despite CDE's failure to afford reasonable accommodation as required by both state and federal law.

The superior court issued a peremptory writ of mandamus. The court found inapplicable the federal Rehabilitation Act of 1973 (29 U.S.C. § 701 et seq.; federal Rehabilitation Act). Although the federal Rehabilitation Act requires reasonable accommodation for alcoholism, it expressly excepts from that requirement alcoholic employees whose current use of alcohol renders them unable to perform the duties of the job or who pose a threat to property or to the safety of others. The superior court made a finding plaintiff fell within that exception.

The superior court concluded alcoholism is a disability under state law to which the employer must make reasonable accommodation. The court rejected the argument of CDE that state law contains an exception similar to that in the federal Rehabilitation Act. The superior court adapted to state law certain specific criteria of reasonable accommodation to alcoholism which have been judicially engrafted upon the federal Rehabilitation Act. (See

*Rodgers* v. *Lehman* (4th Cir. 1989) 869 F.2d 253, 258; *Fuller* v. *Frank* (9th Cir. 1990) 916 F.2d. 558, 561-562.) Applying those criteria, the superior court held CDE was required to afford plaintiff an opportunity for in-patient treatment before it could lawfully terminate him for alcoholism-related misconduct unless CDE could demonstrate such accommodation would present an undue hardship. The superior court found plaintiff's abandonment of the vehicle and failure to notify CDE of his whereabouts were misconduct related to plaintiff's alcoholism and dismissed these charges. The Board was directed to determine whether facilitating in-patient treatment would pose an undue hardship on CDE and, if not, to determine the appropriate penalty for any misconduct not related to plaintiff's alcoholism.

## II

■ Review of disciplinary action by an appointing authority is directed in the first instance to the Board. The Board acts as an adjudicatory body, weighing the evidence to determine the facts and exercising discretion to ascertain whether the charges sustained are sufficient for the discipline imposed. (*Department of Parks & Recreation* v. *State Personnel Bd.* (1991) 233 Cal.App.3d 813, 827 [284 Cal.Rptr. 839].) Because the Board is an agency of constitutional authority, its findings of fact are reviewable in an administrative mandamus proceeding under the substantial evidence test. (*Coleman* v. *Department of Personnel Administration* (1991) 52 Cal.3d 1102, 1125 [278 Cal.Rptr. 346, 805 P.2d 300].) "The record must be viewed in a light most favorable to the decision of the Board and its factual findings must be upheld if they are supported by substantial evidence." (*Department of Parks & Recreation* v. *State Personnel Bd., supra,* 233 Cal.App.3d at p. 823.)[2]

Plaintiff does not dispute the facts. He acknowledges misconduct but challenges the discipline imposed. As a general matter, the penalty determination in a disciplinary proceeding will not be disturbed absent a manifest abuse of discretion. (*Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194, 217 [124 Cal.Rptr. 14, 539 P.2d 774].) "The discretion exercised by the administrative body must be an impartial one taking into account all relevant facts, together with legal principles essential to an informed and just decision. . . . However, even were the penalty to appear harsh to us, still we would not be free to substitute our discretion for that of the administrative

---

[2]Given this standard of review, the superior court erred in making its own findings of fact on the administrative record. For example, the court found that plaintiff's current use of alcohol rendered him unable to perform his job and posed a threat to the property and safety of others. Either of these exceptions, if found as a matter of fact, would render plaintiff ineligible for the protection of the federal Rehabilitation Act. (See 29 U.S.C. § 706(8)(C)(v).)

body. . . . The fact that reasonable minds might differ as to the propriety of the penalty imposed fortifies the conclusion that the administrative body acted within its discretion." (*Shea* v. *Board of Medical Examiners* (1978) 81 Cal.App.3d 564, 579 [146 Cal.Rptr. 653], citations omitted.)

In determining the appropriate discipline, "the overriding consideration . . . is the extent to which the employee's conduct resulted in, or if repeated is likely to result in, '[h]arm to the public service.' [Citations.] Other relevant factors include the circumstances surrounding the misconduct and the likelihood of its recurrence." (*Skelly* v. *State Personnel Bd.*, *supra*, 15 Cal.3d at p. 218.)

Putting aside for the moment plaintiff's alcoholism, we have no difficulty in concluding the allegations of misconduct sustained by the Board warrant the discipline imposed. In the course of his employment, plaintiff committed a misdemeanor by knowingly operating a motor vehicle with a suspended driver's license. (Veh. Code, §§ 14601, 14601.1.) Plaintiff abandoned a state vehicle on a highway, leaving the keys in the ignition and risking loss of the vehicle and injury to others if the vehicle were stolen and operated recklessly or negligently. As it was, it cost CDE $623.43 plus the time of its employees to recover the vehicle. Plaintiff also failed to attend the migrant education compliance review in San Benito County and did not notify his employer of his whereabouts. Thereafter, while on administrative leave occasioned by his misconduct, plaintiff failed to comply with orders to call his employer and to file an incident report. Under these circumstances, we cannot say the Board abused its discretion in upholding plaintiff's termination.

Plaintiff nevertheless contends, and the superior court agreed, that to the extent the misconduct was caused by alcoholism, it cannot be the basis for imposing discipline. According to plaintiff, CDE was obligated by state and federal law to make reasonable accommodation for his alcoholism through treatment and counseling, and no misconduct caused by his alcoholism can be considered grounds for discipline until such accommodation has first been attempted. We now turn to consideration of state disability law.

III

Government Code section 19230 declares it is legislative policy "to encourage and enable individuals with a disability to participate fully in the social and economic life of the state," to encourage employment of such individuals in state service, and to require state agencies to "make reasonable accommodation to the known physical or mental limitations of an otherwise

qualified applicant or employee who is an individual with a disability."[3] (Further statutory references to sections of an undesignated code are to the Government Code.) Section 19231 defines the term "individual with a disability" as "any individual who (A) has a physical or mental impairment which substantially limits one or more of that individual's major life activities, (B) has a record of impairment, or (C) is regarded as having such an impairment."[4]

Section 19230 et seq. is part of a statute which replaced and enlarged upon section 3550. Section 3550 had declared it legislative policy to encourage participation and employment of "blind persons, visually handicapped persons, and other *physically* disabled persons." (Stats. 1968, ch. 461, § 2, p. 1094, italics added.) Section 19230 et seq. added to the definition of disability both physical and *mental* impairment. (Stats. 1977, ch. 1196, § 1, p. 3977.) In 1992, the most recent amendments to section 19230 et seq. replaced "disabled person" with "individual with a disability." (Stats. 1992, ch. 913, §§ 27, 28.)[5]

A cursory reading of the statute suggests a potentially dispositive question: is alcoholism "a physical or mental impairment" within the meaning of section 19230 et seq.? However, we need not decide that threshold question,

---

[3]Section 19230 reads: "The Legislature hereby declares that:

"(a) It is the policy of this state to encourage and enable individuals with a disability to participate fully in the social and economic life of the state and to engage in remunerative employment.

"(b) It is the policy of this state that qualified individuals with a disability shall be employed in the state service, the service of the political subdivisions of the state, in public schools, and in all other employment supported in whole or in part by public funds on the same terms and conditions as the nondisabled, unless it is shown that the particular disability is job related.

"(c) It is the policy of this state that a department, agency, or commission shall make reasonable accommodation to the known physical or mental limitations of an otherwise qualified applicant or employee who is an individual with a disability, unless the hiring authority can demonstrate that the accommodation would impose an undue hardship on the operation of its program. A department shall not deny any employment opportunity to a qualified individual with a disability if the basis for the denial is the need to make reasonable accommodation to the physical and mental limitations of the applicant or employee."

[4]Section 19231, subdivision (a)(1) reads:

"(a) As used in this article, the following definitions apply:

"(1) Individual with a disability means any individual who (A) has a physical or mental impairment which substantially limits one or more of that individual's major life activities, (B) has a record of impairment, or (C) is regarded as having such an impairment.

"An individual with a disability is 'substantially limited' if he or she is likely to experience difficulty in securing, retaining, or advancing in employment because of a disability."

[5]The fact sections 19230 and 19231 were amended to substitute "individuals with a disability" for "disabled persons" is of no significance. The amendments simply reflect current usage without effecting substantive change.

even though it is an open question. We are spared that task because CDE concedes alcoholism is a covered disability.[6]

■ As an "individual with a disability" within the meaning of section 19230, plaintiff contends CDE is obligated to make reasonable accommodation to the "limitations" imposed by his disability. Those "limitations," as manifested here, presumably include a loss of self-control due to alcoholism such that he cannot avoid conduct which, were he not an alcoholic, would provide ample justification for his discharge. Countering, CDE argues that section 19230 provides no shelter to an employee discharged not for alcoholism but for *misconduct.* CDE relies on federal cases which have so held under the federal Rehabilitation Act. CDE baldly asserts the same rule applies under state law but cites no authority therefor. Nor does CDE essay a comparative analysis of the respective state and federal statutes to demonstrate the persuasive force of these federal authorities. ■ As a general rule, an argument on appeal may be deemed waived if not supported by legal argument and authority. (*Utz* v. *Aureguy* (1952) 109 Cal.App.2d 803, 807 [241 P.2d 639]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 479, p. 469.) Moreover, CDE has not previously raised this issue in this litigation. Although we have not been provided a record of the administrative proceedings, the detailed findings and opinion of the Board do not refer to this issue directly or even elliptically. Nor was the issue alleged in the pleadings before the superior court or mentioned in that court's judgment.

" 'The general rule is that a party to an action may not for the first time on appeal change the theory upon which the case was tried. . . . The exception to this rule exists where a question of law only is presented on the facts appearing in the record.' . . . 'Whether the rule is to be applied is largely a question of an appellate court's discretion.' . . ." (*Sylve* v. *Riley* (1993) 15 Cal.App.4th 23, 26, fn. 1 [18 Cal.Rptr.2d 608], citations omitted.)

Because, as we shall explain, plaintiff's misconduct rendered him ineligible for protection under section 19230 et seq. *as a matter of law*, that issue

---

[6]In In re Aceves (1992) State Personnel Board Decision No. 92-04 (Cal. State Personnel Bd., Precedential Decisions (Cont. Ed. Bar Feb. 1992) SPB Nos. 26436, 27305), the Board decided alcoholism was not a disability within the meaning of section 19230, but held it could be considered in mitigation of discipline. (At p. 14.) Although we would normally give great weight to the interpretation of the statute by the agency charged with enforcing it, we are constrained to accept CDE's concession but we do so for the purpose of this appeal only.

In its opening brief, CDE "assumes [we] will hold that alcoholism is a disability within the meaning of Section 19230 and 19231." How we should arrive at that "holding" when the issue has never been joined frankly escapes us. If there are arguments on the other side of the issue, and we assume there are, CDE does not make them. We will not shirk a difficult task of statutory construction if it is properly tendered to us, but we decline to place our imprimatur on a particular rendering of an ambiguous statute simply because that accords with a view of appropriate policy that CDE appears to prefer.

was not waived by failure previously to raise it. Notwithstanding the lack of legal argument and cited authority, we shall therefore address the issue here.

## IV

We have found no California appellate decisions considering the issue now urged by CDE. Therefore we look to federal decisions applying the federal Rehabilitation Act, which in many ways is similar to section 19230 et seq. The federal act provides: "No *otherwise qualified* individual with a disability in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." (29 U.S.C. § 794(a).) A federally assisted employer must make "reasonable accommodation to the known physical and mental limitations" of its employees "unless [it] can demonstrate that the accommodation would impose an undue hardship on the operation of its program." (29 C.F.R. § 1613.704(a) (1994); italics added.)

It is apparently settled that addictive substance abuse, including alcoholism, is a disability under the federal Rehabilitation Act. (*Rodgers* v. *Lehman*, *supra*, 869 F.2d 253, 258.)

A number of federal decisions have held the reasonable accommodation requirement of the federal Rehabilitation Act does not preclude termination based not on alcoholism or other addictive substance abuse but on misconduct. In *Copeland* v. *Philadelphia Police Dept.* (3d Cir. 1988) 840 F.2d 1139], the Third Circuit affirmed a summary judgment for the defendant police department where an officer had been terminated for use of illegal drugs. On the officer's federal Rehabilitation Act claim, the court indicated: "'A handicapped individual . . . is not otherwise qualified if there is a factual basis in the record reasonably demonstrating that accommodating that individual would require . . . a modification of the essential nature of the program. . . .'" (*Id.* at p. 1148.) "[A]ccommodating a drug user within the ranks of the police department would constitute a 'substantial modification' of the essential functions of the police department and would cast doubt upon the integrity of the police force . . . . [¶] Because a police department is justified in concluding that it cannot properly accommodate a user of illegal drugs within its ranks, *we conclude that Copeland is not otherwise qualified* for the position and thus does not qualify for the protections afforded by the Act." (840 F.2d at p. 1149, italics added.)

In *Butler* v. *Thornburg* (5th Cir. 1990) 900 F.2d 871, an agent of the Federal Bureau of Investigation was terminated because of several alcohol-related incidents, to wit, picking fights with others, driving a bureau vehicle

into a wall, and forgetting where he left another bureau vehicle. The Fifth Circuit affirmed dismissal of the agent's federal Rehabilitation Act claim, explaining: "[T]he Rehabilitation Act offers no protection to Butler because he has shown himself incapable of safely performing his duties, even the simplest of which—carrying a loaded firearm—is a demanding and dangerous one." (900 F.2d at p. 876.)

In *Taub* v. *Frank* (1st Cir. 1992) 957 F.2d 8, a postal service employee was terminated following his arrest for possession of heroin with intent to distribute. The First Circuit affirmed a grant of summary judgment to the defendants on the employee's federal Rehabilitation Act claim. The court concluded the employee's criminal conduct "was a sufficient basis upon which to conclude that he was not a 'qualified handicapped person.'" (957 F.2d at p. 11.)

In perhaps the clearest explication of the principle, the federal district court in *Wilbur* v. *Brady* (D.D.C. 1992) 780 F.Supp. 837 dismissed a Rehabilitation Act claim based on the termination of a Bureau of Alcohol, Tobacco and Firearms agent who killed a child while driving an agency vehicle under the influence of alcohol. The court explained: "A disabled individual cannot be *'otherwise qualified'* for a position if he commits misconduct which would disqualify an individual who did not fall under the protection of the statute. The Rehabilitation Act mandates nondiscrimination against disabled individuals; it does not waive basic prerequisites to service. Engaging in serious criminal acts . . . could disqualify anyone, regardless of ability, from continuing to serve the federal government. . . . [¶] The Rehabilitation Act is designed to put individuals with disabilities on equal footing with non-disabled people in regards to the hiring, promotion, and discharge decisions of the federal government and its grantees. It is not designed to insulate them from disciplinary actions which would be taken against any employee regardless of his status. [¶] . . . [T]hose who commit serious misconduct will not find refuge in the Rehabilitation Act. This outcome does not, as plaintiff asserts, read the word 'rehabilitation' out of the Act. It merely recognizes that the Act is designed to help rehabilitate those who have not already disqualified themselves through their own misconduct." (780 F.Supp. at p. 840, italics added.)

In *Little* v. *F.B.I.* (4th Cir. 1993) 1 F.3d 255, the plaintiff, an agent of the Federal Bureau of Investigation, was an alcoholic. He was terminated because of alcohol-related misconduct, i.e., drunk driving and intoxication while on duty. The court concluded the plaintiff was not entitled to the protection of the federal Rehabilitation Act: "Based on the foregoing authority—the agency regulations implementing the Rehabilitation Act, the provisions of the F.B.I.'s M[anual of] A[dministrative] O[perations and] P[rocedures], and the judicial opinions just discussed—and based on no lesser

authority than common sense, it is clear that an employer subject to the Rehabilitation Act must be permitted to terminate its employees on account of egregious misconduct, irrespective of whether the employee is handicapped. [¶] On the record before us, it plainly appears that the appellant was fired because of his misconduct, not because of his alcoholism.' (*Id.* at p. 259.) "[W]e agree with the district court that Little was not '*otherwise qualified*' to be an FBI special agent. However, we also rest our decision on a different portion of the statute . . . . The Rehabilitation Act applies only where the 'otherwise qualified handicapped individual' is subjected to adverse action taken 'solely by reason of his handicap.' 29 U.S.C. § 794. In this case, it is manifest that Little was not terminated 'solely by reason of his handicap.'" (1 F.3d at p. 259, italics added.)[7]

 Section 19230, subdivision (b) declares it is state policy that "*qualified* individuals with a disability shall be employed in the state service . . . *on the same terms and conditions as the nondisabled.*" (Italics added.) Section 19230, subdivision (c) requires reasonable accommodation "to the known physical or mental limitations of an *otherwise qualified* applicant or employee who is an individual with a disability." (Italics added.)

We are persuaded by the federal decisions discussed above, which interpret language in the federal statute virtually identical to that in section 19230, subdivision (c), that if an employee's misconduct is such as to render him not "otherwise qualified" for the position held, termination is not prohibited by section 19230 et seq.

Whether an employee's misconduct is such as to render him not "otherwise qualified" within the meaning of section 19230 will sometimes present a question of fact turning on the type and severity of the misconduct and the nature of his job. However, in cases of egregious misconduct, as in the federal decisions discussed above, it presents a question of law. This case also involves egregious misconduct. Regardless of the nature of plaintiff's job, he committed a crime by knowingly driving with a suspended license. Because the suspension of his license was due to lapses of consciousness, his driving risked serious injury to himself and others, for which CDE could have been liable. Plaintiff also abandoned a state vehicle on a highway with

---

[7]*Rodgers* v. *Lehman, supra,* 869 F.2d 253 established criteria for reasonable accommodation of alcoholism which presuppose misconduct, and hence might be read to imply alcoholism-related misconduct would not disqualify an employee from the right to reasonable accommodation. (See also *Fuller* v. *Frank, supra,* 916 F.2d 558.) The *Rodgers* decision preceded those discussed above. Moreover, it was issued by the same court that later decided *Little.* The *Rodgers* court did not consider the question of whether misconduct could render an employee not otherwise qualified and hence is not authority for the contrary rule. (*Isbell* v. *County of Sonoma* (1978) 21 Cal.3d 61, 73 [145 Cal.Rptr. 368, 577 P.2d 188].)

the keys in the ignition, again risking serious injury and loss of property for which CDE could have been liable. These acts, plus plaintiff's failure to attend to the duties of his employment and to comply with orders to call in and file a report, establish beyond cavil that notwithstanding his alcoholism plaintiff was not otherwise qualified for his job with CDE. Plaintiff was therefore not entitled to the protection of section 19230 et seq.[8]

V

Section 794(a) of 29 United States Code reads in relevant part: "No otherwise qualified individual with a disability in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." It is undisputed CDE receives federal financial assistance for the program in which plaintiff was employed.

Plaintiff contends he is entitled to the protection of the federal Rehabilitation Act. The superior court ruled against plaintiff on this claim, concluding he fell within an exception to the reasonable accommodation requirement for "any individual who is an alcoholic whose current use of alcohol prevents such individual from performing the duties of the job in question or whose employment, by reason of such current alcohol abuse, would constitute a direct threat to property or the safety of others." (29 U.S.C. § 706(8)(C)(v).) Plaintiff did not appeal the judgment.

Nevertheless, on appeal, plaintiff may raise a claim of error in order to establish that the superior court's judgment ordering the Board to reconsider was a correct disposition even though done for the wrong reasons. Code of Civil Procedure section 906 allows a nonappealing respondent to request a reviewing court to consider any rulings involving the merits or affecting the judgment or the rights of a party "for the purpose of determining whether or not the appellant was prejudiced by the error or errors upon which he relies for reversal or modification of the judgment from which the appeal is taken." Plaintiff urges us to conclude the superior court erroneously found he came within the exception to the federal Rehabilitation Act. Thus, even if the superior court erred in ruling state law required CDE to make reasonable accommodation to plaintiff's disability, CDE would not be prejudiced by that erroneous ruling if the superior court also erred in concluding

---

[8]Amicus curiae California Department of Personnel Administration has attached to its brief a copy of selected pages from a Guide for Implementing Reasonable Accommodation dated May 1992. Plaintiff has moved to strike the attachments to the amicus curiae brief as not part of the administrative record. Because we have decided plaintiff is not entitled to reasonable accommodation under state law, we have no occasion to consider the attachments. We therefore grant the motion to strike.

plaintiff was excepted from the federal reasonable accommodation requirements because a contrary ruling under federal law would also require the superior court to order the Board to reconsider its decision.

██ It is irrelevant that the superior court erred in concluding plaintiff fell within an exception to the federal statute. For the same reason plaintiff is not entitled to the protection of section 19230 et seq., i.e., the nature of his misconduct rendered him not otherwise qualified for the job as a matter of law, plaintiff is not entitled to the protection of the federal Rehabilitation Act. In addition, as discussed in *Little*, the federal Rehabilitation Act applies only where discipline is imposed "solely" because of a disability. (29 U.S.C. § 794(a).) Here, plaintiff was terminated for misconduct, not alcoholism. Even where some or all of the charged misconduct was caused by alcoholism, relief under the federal Rehabilitation Act is unavailable. (See *Little* v. *F.B.I.*, *supra*, 1 F.3d at p. 259; *Taub* v. *Frank*, *supra*, 957 F.2d at p. 11; *Carrozza* v. *Howard County, MD* (D.Md. 1994) 847 F.Supp. 365, 367.)

The judgment is reversed and the matter remanded to the trial court with directions to enter judgment denying plaintiff's writ petition. CDE shall recover its costs on appeal.

Sparks, J., and Davis, J., concurred.